UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TITUS KURIA, <br><br> Plaintiff, <br><br> v. <br><br> THOMAS LAFFERTY, in his individual capacity, and THE CITY OF LOWELL, <br><br> Defendants. | Civil Action No. 13-12303 |

## COMPLAINT

**INTRODUCTION**

1. This is a civil rights action for an unlawful arrest and malicious prosecution that resulted from the City of Lowell's failure to supervise the widespread misuse of confidential informants in the Lowell Police Department. Plaintiff Titus Kuria was arrested on October 11, 2011, after a confidential informant planted a gun in his car. The confidential informant had worked closely with Defendant Thomas Lafferty, a detective in the Lowell Police Department's Special Investigations Section, on more than fifty occasions. Defendant Lafferty knew that the confidential informant had planted evidence. Defendant Lafferty knew or recklessly disregarded that the gun in Mr. Kuria's car had been planted, but arrested Mr. Kuria anyway. The arrest destroyed Mr. Kuria's life, leaving him homeless and unemployed.

2. Defendant Lafferty's conduct was a result of the City of Lowell's systemic failure to supervise the use of confidential informants within its police department. The Lowell Police Department allowed police officers in the Special Investigations Section ("SIS"), also known as the "Vice Squad," to use informants who were planting evidence on people. For more than twenty years, the Lowell Police Department ignored its own written policies on the use of confidential

informants. Officers in the SIS were led to believe that this conduct was acceptable because the ends justified the means. The City had a policy or custom of tolerating violations of people's constitutional rights in order to obtain convictions. As a result of the City of Lowell's policies and customs, Mr. Kuria was arrested, charged and held in custody for a crime he did not commit.

**JURISDICTION**

3. This action is brought pursuant to 42 U.S.C. §1983 and §1988 and the Fourth and Fourteenth Amendments to the U.S. Constitution. Title 28 U.S.C. §1331 and §1343 provide federal question jurisdiction over all federal claims, and 28 U.S.C. §1367 provides supplemental jurisdiction over state law claims.

**PARTIES**

4. Plaintiff Titus Kuria was at all times relevant to this complaint a resident of Middlesex County, Massachusetts.

5. Defendant Thomas Lafferty was at all times relevant to this complaint a duly appointed police officer of the Lowell Police Department. Defendant Lafferty was a detective in the Lowell Police Department Special Investigations Section at all times relevant to this complaint. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts. He is sued in his individual capacity.

6. Defendant City of Lowell is a duly organized municipal corporation under the laws of the Commonwealth of Massachusetts.

**FACTS**

7. In October 2011, Titus Kuria was living in Dracut, Massachusetts. He had recently moved out of his house in Lowell and was in the process of finding a new place to live.

8.      For several years, Mr. Kuria had been friendly with a man in Lowell who shall be identified in this complaint as "FA." Mr. Kuria knew FA as a regular patron of several local bars where Mr. Kuria often played pool.

9.      Unbeknownst to Mr. Kuria, FA had worked closely with Defendant Thomas Lafferty and other members of the Lowell Police Department as a confidential informant for approximately ten years.

10.     In early October 2011, Mr. Kuria asked FA if he knew of any apartments available for rent in the Lowell area. FA told Mr. Kuria that he owned or knew of several available apartments and would be willing to show them to Mr. Kuria.

11.     Mr. Kuria arranged to see these apartments with FA on October 7 and 8, 2011. FA insisted that they take Mr. Kuria's car. FA was a passenger in Mr. Kuria's car on both days.

12.     At some point while FA was a passenger in Mr. Kuria's car, FA hid a gun under the front passenger seat. FA concealed the gun in a plastic bag.

13.     Mr. Kuria did not know that FA had put the gun under his front passenger seat. He did not know there was a gun in his car. He had nothing to do with the gun.

14.     After hiding the gun in Mr. Kuria's car, FA told Defendant Lafferty that there was a gun hidden under the front passenger seat of Mr. Kuria's car. FA provided a description of Mr. Kuria and Mr. Kuria's car, including the license plate number. FA expected to be paid for providing this information.

15.     On the evening of October 11, 2011, Mr. Kuria was in his car driving to work for his overnight shift as a licensed practical nurse ("LPN"). Unbeknownst to Mr. Kuria, Defendant Lafferty was following him in an unmarked police vehicle.

16. After Mr. Kuria drove a short distance into Lowell, Defendant Lafferty instructed other Lowell police officers in a marked police car to stop Mr. Kuria's vehicle. The officers stopped Mr. Kuria's car and ordered him to the ground at gunpoint.

17. While Mr. Kuria was on the ground being handcuffed, Lowell police officers began questioning him about a gun. Mr. Kuria denied having a gun in his car.

18. Defendant Lafferty arrived at the scene while Mr. Kuria was on the ground. Defendant Lafferty and his partner Detective Daniel Desmarais immediately approached the front passenger door of Mr. Kuria's car. Either Defendant Lafferty or Detective Desmarais opened the door and reached under the front passenger seat. The officer recovered the bag that FA had previously hidden. The bag contained a .32 caliber handgun and empty magazine, both hidden inside of a sock.

19. Mr. Kuria saw the officers go directly to the front passenger seat. The officers appeared to know what they were looking for and exactly where in the car they would find it.

20. Defendant Lafferty knew that a gun was hidden under the front passenger seat of Mr. Kuria's car because FA had told him this would be the case.

21. Mr. Kuria was arrested and charged with carrying a firearm without a license, a felony with a mandatory minimum sentence of 18 months in custody. He was also cited for a civil motor vehicle infraction.

22. Mr. Kuria was shocked and confused when he was arrested. He had no idea how a gun could have been in his car. He realized that FA, who he thought was a friend, had been a passenger in his car a few days earlier. He wondered if FA had planted a gun in his car and told police about it so they would arrest him.

23. Defendant Lafferty wrote a police report about Mr. Kuria's arrest and caused him to be charged with a serious crime: carrying a firearm without a license. Defendant Lafferty knew the charge was false.

24. In writing his police report Defendant Lafferty included many knowingly false statements and omitted material facts to give a false impression about the circumstances of Mr. Kuria's arrest. The police report falsely claimed that the bag containing the gun was recovered in plain sight on the front passenger seat. Defendant Lafferty falsely claimed that the gun had been wrapped so tightly in the bag that the outline of a gun was immediately apparent. The police report failed to mention that the informant, FA, had planted evidence on suspects in the past. The report failed to mention that FA had placed the gun under the seat of Mr. Kuria's car.

25. Defendant Lafferty knowingly filed a false police report to prevent scrutiny of his illegal conduct and the illegal conduct of his informant, FA, in planting a gun in Mr. Kuria's car.

26. After his arrest, Mr. Kuria spent about four months in custody at the Middlesex County Jail in Cambridge. In jail, Mr. Kuria met other prisoners who told him that FA was a paid informant and they too had been set up by FA.

27. While he was in jail, Mr. Kuria fell and suffered a physical injury to his face. As a result of the injury, Mr. Kuria chipped a tooth.

28. Mr. Kuria's bail was reduced at a court hearing in or about February 2012. When Mr. Kuria posted bail, he was immediately transferred to the custody of Immigration and Customs Enforcement due to the criminal charge pending against him.

29. Mr. Kuria remained in ICE custody at the Plymouth County Correctional Facility for approximately four months until he was released after a court hearing in June 2012.

30. Because he was in ICE custody, Mr. Kuria had been unable to attend a court hearing in Lowell for the gun charge pending against him. As a result, a default warrant had issued against Mr. Kuria while he was in ICE custody.

31. In March 2013, Mr. Kuria was pulled over in Salem and arrested on the default warrant. He was again held in custody at the Middlesex County Jail.

32. At the time of Mr. Kuria's arrest, FA had been working as a confidential informant for members of the Lowell Police Department for about ten years. In February 2012, FA worked primarily as a confidential informant for Defendant Lafferty.

33. At the time of Mr. Kuria's arrest, Defendant Lafferty had been a detective in the Special Investigations Section for approximately seven years.

34. Vice squad officers like Defendant Lafferty investigate violations of gun and narcotics laws. They typically work in civilian clothing and frequently work with confidential informants. Members of the SIS typically work together in teams.

35. Defendant Lafferty had used FA as a confidential informant for many years. Defendant Lafferty testified during Mr. Kuria's criminal case that he had used FA as an informant in more than fifty cases before Mr. Kuria's arrest.

36. FA had received substantial rewards for working as an informant for Defendant Lafferty and other Lowell police officers. FA received a cash payment for providing information about Mr. Kuria.

37. On information and belief, Defendant Lafferty and other Lowell police officers were aware that FA was engaged in crime—including dealing drugs in Lowell—while he was also working as an informant for the Lowell vice squad. Defendant Lafferty and other Lowell police officers allowed FA to commit crimes because he worked as an informant.

38.     In early 2013, a man who shall be identified in this complaint as "FB" met with officers from the Massachusetts State Police about working for them as an informant. He boasted about his skill and experience in planting evidence. FB told the State Police that he had planted evidence for Lowell police officers.

39.     FB told the State Police about working with FA to plant evidence in a different case.

40.     The State Police immediately understood that FA and FB could not be used in criminal investigations because FB admitted that they planted evidence. It would have been obvious to any competent police officer that FA and FB were not reliable informants. The State Police reported this information about FA and FB to the Middlesex County District Attorney's office.

41.     After the District Attorney's office obtained this information from the State Police they began to file motions asking that cases involving the informants be dismissed.

42.     On April 10, 2013, the criminal charge against Mr. Kuria was dismissed when the District Attorney's office filed a nolle prosequi stating that the case should be dismissed in the interests of justice. Mr. Kuria was released from custody.

43.     Defendant Lafferty and other Lowell police officers led FA and FB to believe that planting evidence on suspects was a skill that Lowell police officers valued. FA and FB considered their skill at planting evidence to be valuable to police officers.

44.     Defendant Lafferty knew that FA was able to predict the location of illegal guns and drugs with a level of accuracy that was too good to be true.

45.     Defendant Lafferty knew that FA, either by himself or together with FB, had planted evidence on people then reported the location of the drugs to Lafferty or other SIS members.

46. In the alternative, Defendant Lafferty recklessly disregarded facts that would have led a reasonable, properly trained police officer to believe that FA had planted evidence on people and then informed on those people to police officers.

47. Defendant Lafferty failed to testify truthfully at trials and motion hearings, including a motion hearing in Mr. Kuria's case, in order to prevent disclosure of his use of informants and his unlawful techniques. In some cases, Defendant Lafferty concealed his use of an informant entirely to avoid scrutiny of the informant's credibility.

48. Defendant Lafferty failed to keep proper records relating to his use of FA as an informant. This includes records relating to payments or other rewards provided to FA in exchange for information.

49. Mr. Kuria was held in custody for a total of approximately nine months as a result of this arrest. When Mr. Kuria was released from custody he had no job and no income. He suffered a loss of earning capacity while the charges were pending and afterwards. He suffered emotionally as a result of being charged with a serious crime that he did not commit. He felt helpless and hopeless knowing that he had been set up but not knowing if anyone would believe him.

**CLAIMS**

**COUNT I**     **42 U.S.C. § 1983 Claim Against Defendant Lafferty**

50. The above paragraphs are incorporated by reference.

51. Defendant Lafferty used FA as a paid informant on at least fifty cases.

52. Defendant Lafferty was aware that FA was planting evidence on suspects so that Defendant Lafferty and other SIS members could find illegal items and make arrests. On information and belief, Defendant Lafferty encouraged this behavior.

53. Defendant Lafferty knew from FA that a gun had been hidden under Mr. Kuria's front passenger seat. Defendant Lafferty knew that FA was able to predict the location of illegal guns and drugs with a level of accuracy that was too good to be true. Defendant Lafferty knew or recklessly disregarded that FA had planted the gun in Mr. Kuria's car.

54. Defendant Lafferty arrested Mr. Kuria without probable cause based on evidence he knew or should have known was placed in Mr. Kuria's car without his knowledge.

55. Defendant Lafferty led an effort to frame Mr. Kuria for a crime he did not commit.

56. Defendant Lafferty deprived Mr. Kuria of his well-established constitutional right to be free from arrest without probable cause and to be free from an unreasonable seizure of his person under the Fourth Amendment to the United States Constitution as applied under the Fourteenth Amendment and his right to due process of law under the Fourteenth Amendment.

57. As a direct and proximate result of Defendant's actions, Mr. Kuria suffered the damages described above.

**COUNT II**   **42 U.S.C. § 1983 Claim Against The City Of Lowell**

58. The above paragraphs are incorporated by reference.

59. The City of Lowell allowed an unwritten policy or custom to develop in the Lowell Police Department of permitting paid police informants to plant evidence on suspects.

60. The Lowell Police Department had a written policy on the use of confidential informants in place as early as 1989. The written policy on the use of confidential informants required review of informant activity, recording interactions with informants, keeping records of payments to each informant and keeping track of the informant's rate of success. The written policy is designed to prevent corrupt practices by informants and police officers.

61. The Lowell Police Department ignored its written policy on the use of informants until 2013, when the Essex County District Attorney's office began investigating the Lowell Police Department's use of FA and FB as confidential informants. For more than twenty years, the police department did not maintain proper records or follow other safeguards on the use of informants by its police officers.

62. On information and belief, FA had participated with Defendant Lafferty and with other Lowell police officers in planting evidence on a number of people in Lowell before he planted evidence on Mr. Kuria. FA either planted evidence himself or arranged for FB to plant evidence.

63. On information and belief, Lowell police officers in the SIS were aware that FA and FB were willing to plant evidence on suspects. This violation of the Constitution was tolerated and encouraged by the officers because of their mistaken belief that the ends justified the means.

64. The Lowell Police Department has a policy or custom of failing to properly investigate allegations of misconduct by its police officers that violate the rights of people in Lowell and of failing to discipline officers for these violations. This includes failing to investigate allegations that police officers used unreasonable force on civilians and allegations that informants or police officers had planted evidence on criminal suspects. This policy or custom has led Lowell police officers to believe that they can violate the United States Constitution with impunity because they will not be disciplined for their misconduct.

65. The Lowell Police Department has a policy or custom of failing to properly investigate allegations of misconduct when Lowell police officers are sued for civil rights violations. The City of Lowell and its police department fail to investigate allegations of police misconduct in civil suits unless the City itself is sued. Most police departments investigate allegations against individual officers. Lowell's policy or custom of ignoring these allegations delays proper

investigation of the police officers' conduct and sends the message that Lowell police officers will not be disciplined for misconduct that results in civil litigation.

66.     The Lowell Police Department allowed its police officers, particularly those in the Special Investigations Section, to perform their work with the view that the ends justify the means. This way of thinking became a custom in the police department so that police officers felt that making arrests and obtaining convictions while violating the United States Constitution was an acceptable way of performing their work. As a result, Lowell police officers felt that using confidential informants to plant evidence on people would be accepted by the Lowell Police Department and the City of Lowell even though it violated the Constitution and laws of the United States and the Commonwealth of Massachusetts.

67.     These policies and customs of the City of Lowell were the moving force behind FA planting a gun in Mr. Kuria's car and Defendant Lafferty's resulting violations of Mr. Kuria's constitutional rights to be free from arrest without probable cause and to be free from an unreasonable seizure of his person under the Fourth Amendment to the United States Constitution as applied under the Fourteenth Amendment and his right to due process of law under the Fourteenth Amendment.

68.     As a direct and proximate result of Defendants' actions, Mr. Kuria suffered the damages described above.

**COUNT III   Tort of Malicious Prosecution Against Defendant Lafferty**

69.     The above paragraphs are incorporated by reference.

70.     Defendant Lafferty caused criminal proceedings to be instituted against Mr. Kuria without probable cause and with malice as defined by state tort law. The proceedings terminated in Mr. Kuria's favor.

71. As a direct and proximate result of Defendant Lafferty's conduct, Mr. Kuria suffered the damages described above.

**COUNT IV**  **Tort of Intentional Infliction of Emotional Distress**

72. The above paragraphs are incorporated by reference

73. Defendant Lafferty acted intentionally to arrest, imprison, and bring criminal charges against Mr. Kuria without probable cause.

74. Defendant Lafferty's conduct was extreme and outrageous and likely to result in emotional distress to Mr. Kuria.

75. Defendant Lafferty caused Mr. Kuria to suffer severe emotional distress.

76. As a direct and proximate result of Defendant Lafferty's conduct, Mr. Kuria suffered the damages described above.

**WHEREFORE,** Plaintiff requests that this Court:

1. Award compensatory damages;

2. Award punitive damages against Defendant Lafferty;

3. Award the costs of this action, including reasonable attorneys' fees; and,

4. Award such other further relief as this Court may deem necessary and appropriate.

**JURY DEMAND**

A trial by jury is hereby demanded.

RESPECTFULLY SUBMITTED,

For the Plaintiff,
By his attorneys,

/s/ Howard Friedman
Howard Friedman, BBO #180080
David Milton, BBO #668908
Drew Glassroth, BBO #681725
**Law Offices of Howard Friedman, PC**
90 Canal Street, Fifth Floor
Boston, MA 02114-2022
(617) 742-4100
hfriedman@civil-rights-law.com
dmilton@civil-rights-law.com
dglassroth@civil-rights-law.com

Date: September 19, 2013